Stein, J.
Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered December 13, 2011, upon a verdict convicting defendant of the crimes of criminal possession of a forged instrument in the second degree (two counts), criminal possession of stolen property in the fourth degree (four counts) and unlawful possession of personal identification information in the third degree (11 counts).
In June 2010, State Police received information from Allyson Gorney that she and defendant had been engaged in a scheme in which they made fraudulent checks and used stolen identification cards to cash them. That information led to the issuance and execution of a search warrant at defendant’s apartment. In the closet of the master bedroom, police recovered a green suitcase containing various items used for printing checks, as well as a card skimmer device and an envelope containing, among other things, driver’s licenses, nondriver identification cards, three credit/bank cards, two checks, a New York benefit card and two Social Security cards. Defendant was transported to the police station and, after Miranda warnings were administered, he made certain incriminating Statements.
Defendant was thereafter charged by indictment with criminal possession of stolen property in the fourth degree (four counts), criminal possession of a forged instrument in the second degree (two counts), unlawful possession of personal identification information in the third degree (12 counts) and one count of criminal possession of a skimmer device. At the close of the People’s case, the People consented to the dismissal of one count of unlawful possession of personal identification information and the jury convicted defendant of all the remaining counts, except criminal possession of a skimmer device. Defendant was subsequently sentenced, as a second felony offender, to various concurrent prison terms, the greatest of which is 3x/2 to 7 years. Defendant now appeals.
We affirm. Initially, we reject defendant’s claim that County Court should have suppressed the statements he made to State Police Investigator Timothy Northrup because his Miranda rights were violated. At the suppression hearing, Northrup testified that defendant was taken into custody, brought to the police station and placed in an interview room. Northrup then read defendant his Miranda rights and defendant agreed to answer his questions. According to Northrup, the entire interrogation lasted no more than 25 minutes, and there is no indication in the record that defendant asked to speak with an at *1119 torney at any time. Based on this testimony, the People established that defendant’s statements were voluntarily made after a valid and knowing waiver of his Miranda rights (see People v Kidd, 112 AD3d 994, 996-997 [2013]; People v Mattis, 108 AD3d 872, 874 [2013], lv denied 22 NY3d 957 [2013]).
In accordance with our prior rulings, defendant’s additional argument that the statements should have been suppressed because the interview was not electronically recorded is also unavailing (see People v Moore, 112 AD3d 981, 982 [2013]; People v Beckingham, 57 AD3d 1098, 1099-1100 [2008], lv denied 13 NY3d 742 [2009]; see also People v Dukes, 53 AD3d 1101, 1101 [2008], lv denied 11 NY3d 831 [2008]). Moreover, considering the totality of the circumstances (see People v Aveni, 22 NY3d 1114, 1117 [2014]), we are unpersuaded that, as a result of the minimally deceptive tactics employed by Northrup, defendant’s statements were not “the product of [defendant’s] own choice” (People v Thomas, 22 NY3d 629, 642 [2014]; see People v Wolfe, 103 AD3d 1031, 1035 [2013], lv denied 21 NY3d 1021 [2013]; People v Jaeger, 96 AD3d 1172, 1174 [2012], lv denied 19 NY3d 997 [2012]). Thus, we discern no basis to disturb the denial of defendant’s motion to suppress his statements.
Upon our review of the trial evidence, we find that the jury’s verdict was supported by legally sufficient evidence and was in accord with the weight of the evidence. As to the four counts of criminal possession of stolen property in the fourth degree, the People were required to prove that defendant knowingly possessed a stolen credit card, debit card or public benefit card with the intent to benefit himself or another person (see Penal Law § 165.45 [2]; People v Hall, 57 AD3d 1222, 1226 [2008], lv denied 12 NY3d 817 [2009]). Here, the police recovered a New York benefit card and three credit/bank cards from defendant’s apartment.[1] Inasmuch as defendant was in possession of two or more stolen credit cards, he was “presumed to know that such credit cards . . . were stolen” (Penal Law § 165.55 [3]; see People v Mitchell, 77 NY2d 624, 628 [1991]; People v Hall, 57 AD3d at 1226; People v White, 251 AD2d 157, 157 [1998], lv denied 92 NY2d 908 [1998]).
Moreover, three of the four victims testified that the cards seized from defendant’s apartment belonged to them and had previously been stolen. Although the remaining victim did not testify, Gorney’s testimony established that she and defendant *1120 used stolen property in connection with their scheme, and defendant admitted to Northrup that other people “in his business, his criminal activity, . . . know what he does” and would bring him credit cards or driver’s licenses that “were [either] stolen or he had gotten them from people.” When asked whether he believed that the cards were stolen, he answered, “Probably, yes.” Viewing this evidence in a light most favorable to the People, we find that there is a valid line of reasoning and permissible inferences to support the conclusion reached by the jury as to defendant’s guilt of these four charges (see People v Swackhammer, 65 AD3d 713, 714 [2009]; People v Hall, 57 AD3d at 1227).
In order to convict defendant of criminal possession of a forged instrument in the second degree, the People were required to establish that defendant possessed a forged instrument (see Penal Law § 170.10), “ ‘with knowledge that it is forged and with intent to defraud, deceive or injure another’ ” (People v Rebollo, 107 AD3d 1059, 1060 [2013], quoting Penal Law § 170.25; see People v Hughes, 111 AD3d 1170, 1171 [2013]). Defendant’s knowing possession of forged instruments was established by the two checks—both from “Better Choice Home Care, Inc.”[2] —that were found in his apartment, as well as Gorney’s testimony that she and defendant made checks with the equipment found in the green suitcase and then cashed them using the driver’s licenses that defendant had obtained. One of the checks was made payable to a victim whose driver’s license was found at defendant’s apartment. Thus, defendant’s knowledge was readily inferrable from the surrounding circumstances (see People v Martin, 116 AD3d 1166, 1166 [2014]; People v Monteiro, 93 AD3d 898, 899 [2012], lv denied 19 NY3d 964 [2012]).
With respect to the 11 counts of unlawful possession of personal identification information in the third degree, it was incumbent on the People to establish that defendant “knowingly possesse[d]” a personal identification number “of another person knowing such information [was] intended to be used in furtherance of the commission of a crime” (Penal Law § 190.81). We reject defendant’s assertion that information contained on a driver’s license, nondriver identification card and Social Security card are not encompassed by the statute. A “personal identification number” is defined as “any number or code which may be used alone or in conjunction with any other information to assume the identity of another person or access financial re *1121 sources or credit of another person” (Penal Law § 190.77 [2] [b]). In our view, the identification numbers set forth on the documents found in defendant’s apartment fall within the plain language of that definition. Moreover, defendant’s possession of the identification numbers and his intended use thereof were established by Northrup’s testimony as to the items found in the master bedroom in defendant’s apartment, Gorney’s testimony regarding the manner in which she and defendant used those identification numbers to facilitate their scheme, as well as defendant’s admission to his involvement in making fraudulent checks.
Contrary to defendant’s further contention, Gorney’s testimony as an accomplice was sufficiently corroborated (see CPL 60.22 [1]). “Notably, [independent evidence need not be offered to establish each element of the offense or even an element of the offense; rather, [i]t is enough if [the corroborative evidence] tends to connect the defendant with the commission of the crime [s] in such a way as may reasonably satisfy the jury that the accomplice is telling the truth” (People v Forbes, 111 AD3d 1154, 1157 [2013] [internal quotation marks and citations omitted]; see People v Reome, 15 NY3d 188, 192 [2010]; accord People v Matthews, 101 AD3d 1363, 1365 [2012], lv denied 20 NY3d 1101 [2013]). Here, the proof of the items found in defendant’s apartment, as well as defendant’s own admissions, satisfied the minimal corroboration requirements connecting defendant to the commission of these crimes. The credibility of Gorney’s testimony—in view of, among other things, her cooperation with the police—was fully explored at trial and fell within the jury’s province. Upon evaluating the foregoing evidence in a neutral light and deferring to the jury’s credibility assessments (see People v Romero, 7 NY3d 633, 643-644 [2006]), we are satisfied that the verdict was in accord with the weight of the evidence (see People v Jones, 111 AD3d 1148, 1150 [2013]; People v Pagan, 103 AD3d 978, 981 [2013], lv denied 21 NY3d 1018 [2013]).
Defendant failed to preserve his claim that he was denied the right to confront witnesses—namely, the owners of each of the credit/bank cards, driver’s licenses and nondriver identification cards that were in defendant’s possession (see People v Kello, 96 NY2d 740, 743 [2001]; People v Demagall, 114 AD3d 189, 200 n 6 [2014]; People v Cade, 110 AD3d 1238, 1240-1241 [2013], lv denied 22 NY3d 1155 [2014]). In any event, the Confrontation Clause was not implicated, as the People did not elicit the testimonial statements of any witness who did not appear at trial (see Crawford v Washington, 541 US 36, 53-54 [2004]; *1122 People v Heard, 92 AD3d 1142, 1145 [2012], lv denied 18 NY3d 994 [2012]).
Defendant’s claim that he was denied a fair trial due to a variety of trial errors does not merit extended discussion. First, in view of the fleeting and isolated nature of Northrup’s references to the presence of defendant’s parole officer during the execution of the search warrant and County Court’s amelioration of any prejudice to defendant by its thorough instruction to the jury, the challenged testimony did not amount to reversible error (see People v Rhodes, 49 AD3d 1022, 1023 [2008], lv denied 10 NY3d 963 [2008]). Nor did County Court’s Sandoval ruling constitute an abuse of discretion. County Court found that defendant’s prior two felony and one misdemeanor convictions were probative as to defendant’s credibility and willingness to place his own self-interest above that of society (see People v Young, 115 AD3d 1013, 1014 [2014]; People v Wolfe, 103 AD3d at 1036; People v Alnutt, 101 AD3d 1461, 1464 [2012], lv denied 21 NY3d 941 [2013]), and the court allowed a compromise in which the People would be permitted to question defendant on cross-examination only as to whether he was convicted of such crimes, without reference to the specific crimes or the underlying facts. Contrary to defendant’s claim, the 1997 conviction was not so remote as to require its preclusion, particularly in view of defendant’s incarceration during a significant portion of the time that elapsed since that conviction (see People v Woodard, 93 AD3d 944, 946 [2012]; People v Wilson, 78 AD3d 1213, 1215-1216 [2010], lv denied 16 NY3d 747 [2011]; People v Rosa, 47 AD3d 1009, 1010 [2008], lv denied 10 NY3d 816 [2008]). Overall, the court’s compromise was a provident exercise of the court’s discretion inasmuch as it reflected a measured balance of the probative value and limited the potential prejudicial effect of the evidence in question (see People v Young, 115 AD3d at 1014; People v Mattis, 108 AD3d at 875; People v Wolfe, 103 AD3d at 1036).
Defendant’s challenge to the severity of his sentence is also unpersuasive. Notwithstanding the fact that County Court imposed the maximum allowable sentence for the most serious offense {see Penal Law § 70.06 [3] [d]), when we consider defendant’s criminal history—which includes two prior violent felonies-—his parole status at the time of the offense, the extensive nature of the criminal enterprise that he orchestrated and his refusal to take responsibility for his participation in these crimes, we perceive no extraordinary circumstances or abuse of County Court’s discretion warranting modification of the sentence (see People v Coutant, 111 AD3d 981, 982 [2013]; *1123 People v Rockwell, 18 AD3d 969, 971 [2005], lv denied 5 NY3d 768 [2005]).
To the extent not specifically addressed herein, defendant’s remaining contentions have been considered and found to be without merit.
Peters, EJ., McCarthy and Egan Jr., JJ., concur.
Ordered that the judgment is affirmed.

. Defendant failed to preserve his challenge to the legal sufficiency of the evidence establishing his possession of the items in his apartment, as his motion to dismiss at the close of the People’s case was not directed at this specific ground (see People v Greenfield, 112 AD3d 1226, 1226 [2013]).

. Gorney testified that Better Choice was a business that she and defendant made up using an address that was found in a telephone book.